**UNITED STATES ex rel. TUNGSTEN REEF MINES CO. v. ICKES, Sec. of Interior.**

**No. 6554.**

United States Court of Appeals for the District of Columbia.

Argued April 7, 1936.

Decided May 11, 1936.

———◆———

Josephus C. Trimble, Jerry A. Mathews, and Harry J. Daly, all of Washington, D. C., for appellant.

Nathan R. Margold, Sol., Department of Interior, Donald Hiss, Asst. Sol., Department of Interior, and Frederick Bernays Wiener, all of Washington, D. C., and William H. Abbott, of Chicago, Ill., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

A statement of the facts in chronological order will be helpful to an understanding of the question involved in this case. In May, 1919, appellant, whom we shall hereafter call Tungsten, filed its claim with the Department of the Interior for losses sustained in producing or preparing

to produce tungsten ore under government stimulation as provided in the War Minerals Relief Act of March 2, 1919 (40 Stat. 1272 [50 U.S.C.A. § 80 note]). Tungsten's claim as filed was expressly confined to items for overhead and expense of making test runs from the time of starting to the time of the Armistice; that is to say, expenses necessary to determine upon proper equipment for the prosecution of the work. These items aggregated a little more than $25,000. Tungsten, in its claim and in its evidence in support of the claim, disavowed any intention to include items of property or mining rights and of machinery and equipment cost. It intended to continue operations under a contract, thought to be valuable, with Atlas Crucible Steel Company for supplying tungsten ore.

In 1921 the commissioners before whom the hearing was had filed a report setting forth an itemized statement of the items claimed by Tungsten and those deducted and disallowed, and showing a total net loss of $15,446.61. The report contained this explanatory statement:

"No claim is made herein for property purchased or permanent improvements. The only elements charged are the operating costs from May 5, 1918, to November 11, 1918."

The Secretary, in February, 1921, accepted the report and made the award as recommended. There were no exceptions or objections on the part of Tungsten.

In February, 1929, Congress passed an act (45 Stat. 1166 [50 U.S.C.A. § 80 note]), giving persons who had theretofore filed claims with the Secretary the right to petition the Supreme Court of the District of Columbia for a review of the final decision of the Secretary upon any question of law which had arisen in the adjustment, liquidation, and payment of such claims. In 1930 Tungsten filed in the Supreme Court of the District a petition for review of the decision of the Secretary and for mandamus alleging, as the ground of its petition, that it had made expenditures and sustained losses in preparing to produce tungsten ore under government stimulation; that it had filed a claim on account of such expenditures and losses, in which it showed that it had made expenditures and incurred obligations upon the purchase of property and equipment; that the Secretary had made an award on part of its claim, but that an award for the purchase of property and equipment was denied on the pretext that no claim was made therefor and also because the Secretary held that losses on property investments were not included within the provisions of the act; that this denial was an error of law; and that it was entitled to a court review of the decision and a writ of mandamus to require the Secretary to make an award in accordance with the facts shown.

The Secretary answered, denying that any claim for loss because of property or equipment had ever been made, and asserting, on the contrary, that Tungsten had in its original claim expressly and distinctly disclaimed any intention to make such a claim and that, therefore, no error of law had been committed, since necessarily there had been no finding of law or fact by the Secretary as to the items now claimed.

We stop at this point in the chronology to say that an inspection of the record shows unmistakably that the position taken by the Secretary in the respects just above mentioned is correct; that is to say, the record proves that no claim for property or equipment loss was made by Tungsten or considered by the Secretary on the original claim.

However, in January, 1932, the Secretary agreed with Tungsten to the entry of a judgment for mandamus commanding the Secretary to ascertain whether Tungsten incurred the losses now claimed. The writ was not actually issued.

In June, 1932, five months after the entry of the consent order, Tungsten filled out a questionnaire on a form provided by the Department for claims relating to property, etc. On this form Tungsten showed loss in the purchase of property and equipment in an amount in excess of $114,000.

A week later the Secretary reconsidered the original claim and the additional claim and held, as to the latter, that it was a new claim not a part of the original nor an amendment thereto, and was barred under the provisions of the War Minerals Act because not filed in time.

In April, 1935, more than three years after the consent order, the Secretary filed a motion to vacate that order on the

ground that the court was without jurisdiction to enter it because, under the act of 1929, the court was given jurisdiction to review only final decisions of the Secretary on questions of law arising in the adjustment of claims filed pursuant to the original act. As part of the motion, the Secretary filed an affidavit and exhibits supporting the facts alleged in the motion. Tungsten thereupon filed a motion to strike the Secretary's motion to vacate, assigning as grounds, first, that the judgment of the court was valid and not open to attack by the Secretary's motion to vacate; second, that the alleged question of jurisdiction was res judicata; third, the judgment was valid on its face and the Secretary's motion did not show otherwise; fourth, that the matters alleged in the Secretary's motion were not a valid defense; fifth, that the Secretary's motion was not timely brought.

Upon issue joined on these motions, the trial judge, June 25, 1935, rendered his opinion as follows:

"While in the petition filed February 7, 1930, for review of the decision of the Secretary of Interior and for mandamus, it is alleged that the Secretary of Interior denied relator an award for items of loss by the purchase of property and cost of mill equipment on the pretext that no claim was made for such expenditures and that the same was denied for the sole reason that the Secretary of Interior held as a matter of law that such losses were not included in the provisions of the Act of March 2, 1919, it is clear from the report and recommendation of the War Minerals Relief Commission and the decision of the Secretary of the Interior attached to the petition by the relator, that there was not a final decision of the Secretary upon a question of law with regard to an alleged item of loss incurred by claimant in the purchase of property, and only by virtue of such a decision could this Court have had jurisdiction to enter the order for mandamus. Notwithstanding the order was made upon consent, the Court was without jurisdiction in the matter, and therefore the said order was null and void."

The court thereupon ordered:

(1) That the rule to show cause be discharged and the petition for the rule dismissed.

(2) That the motion to strike the motion to vacate be denied.

(3) That the motion to vacate be granted.

(4) That the order for mandamus be set aside and held for naught.

The appeal assigns as error the action of the court in overruling the motion to strike and in granting the motion to vacate.

■ The contention is that the court had no power to vacate the order after the end of the term. But this, of course, depends upon whether the court had jurisdiction to enter the order. Pollitz v. Wabash R. Co. (C.C.) 180 F. 950, 951, and cases cited. Before discussing this, however, it is proper to notice a preliminary point made by the Secretary; namely, that the appeal should be dismissed because the order appealed from is interlocutory. As to this, we have said many times that an appeal of right does not lie from an interlocutory order. Metzger v. Kelly, 34 App.D.C. 548; Polk & Co. v. Smolik, 44 App.D.C. 55; Taliaferro v. Carter, 63 App.D.C. 304, 72 F.(2d) 172; Fidelity & Deposit Co. v. Hurley, 63 App.D.C. 377, 72 F.(2d) 927. But the rule is subject to this exception: If the decree appealed from was made without jurisdiction on the part of the court making it, then it is a proceeding which may be—or as the Supreme Court said must be—the subject of review by an appellate court. Phillips v. Negley, 117 U. S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; Greyerbiehl v. Hughes Co. (C.C.A.) 294 F. 802–804. In this view the question is not whether the order is final or interlocutory, but whether the court exceeded its power in entering it. The answer to that question will determine the disposition of this appeal.

■ In discussing that question, the first point to be noticed is that the jurisdiction of the Supreme Court of the District of Columbia is, in this case, limited by the provisions of the act of February 13, 1929. It has no other jurisdiction than that act gives it. The act provides that any claimant who has heretofore filed his claim with the Secretary of the Interior—that is to say, has filed it pursuant to the terms of the original act—may petition the Supreme Court of the District of Columbia to review the final decision of the Secretary

upon any question of law which has arisen or may hereafter arise, in the adjustment, liquidation, and payment of his claim; but the decision of the Secretary of the Interior on all questions of fact is made conclusive and not subject to review by any court. The original act (act of 1919) required that all claims should be filed' within three months after the approval of the act. Thus it will be seen the statute confines the jurisdiction within narrow limits. Obviously, it is not enough to show that an original claim was timely filed. More is necessary to establish jurisdiction; for, while that must be shown, it is just as necessary to show that in the adjustment of the claim the Secretary committed errors of law. Upon no other ground is the claimant entitled to be heard in court.

■■■ Here the record shows Tungsten filed a claim with the Secretary, but, as we have said, that claim was confined to certain specific items which the Secretary referred to a commission and, upon its report, allowed in large part. That claim was thereupon satisfied. It was completely disposed of by the ruling of the Secretary at the time, and it is not now sought to revive it. On the contrary, the claim which is now set up is for money spent and obligations incurred in the purchase of property and equipment. That claim is new and was never made within the time limited by the act. It was not brought to the attention of the Secretary and was not considered by him—nor could it have been considered by him—under the claim filed pursuant to the act of 1919; and if this is true, as the record abundantly proves it is, then obviously there was no error of law committed by the Secretary in the consideration of the original claim, subject to review by the court under the provisions of the later act. It is of no consequence, therefore, as is now alleged, that Tungsten on its present claim has demonstrated that it expended money for the purchase of property. The fact, even if admitted, is irrelevant. To bring' the petition filed by Tungsten in the District Court within the purview of the statute, that is to say, to bring it within the jurisdiction of the court, the claim there asserted must have been originally made and must have been disallowed by the. Secretary for some reason reviewable as a question of law. In this view, it is apparent that when the consent order, to which we have made reference, was entered, the record showed that there was not present in the case a dispute within the jurisdiction of the court; and hence it follows inevitably that no valid order on the merits could then be entered. "Courts are constituted by authority and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void." Valley v. Northern F. & M. Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 117, 65 L.Ed. 297. And so here the consent order that was entered, being beyond the court's jurisdiction, was a nullity. The defect was not formal or modal. It was jurisdictional. It was indispensable, in the circumstances, that jurisdiction should be shown, for until it was shown there was nothing on which the court could act. When, therefore, Tungsten filed with its petition to the court the report of the commissioners showing that the only reason the items, then for the first time urged for payment, were not considered on the original claim, was that no claim was made therefor; and when to this are added the answer and exhibits of the Secretary which are not traversed, more than enough appears to make it our duty to say that the record not only fails to show jurisdictional facts, but, on the contrary, shows facts which, in the light of the statute, wholly deprive the court of jurisdiction. Nor can this lack of jurisdiction be waived, United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; nor will consent or silence supply it, Chicago, B. & Q. R. Co. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521. And there is nothing in Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587, to the contrary. Jurisdiction in that case was sustained by reason of jurisdiction of the general subject-matter in controversy between the parties. The present jurisdiction is not so broad. The petition, answer, and exhibits show, for the reasons we have set out, that the claim asserted here is outside the class over which the District Court was given jurisdiction.

We are, therefore, of opinion that the order of January 15, 1932, was made without jurisdiction on the part of the Supreme Court of the District and that the order of June 25, 1935, setting aside the

former order, was within the power of the court and in all respects clearly right.

Appeal dismissed, with costs.